# United States Court of Appeals

## For the Eighth Circuit

_____

No. 25-1490

_____

Keith L. Carnes

*Plaintiff - Appellee*

v.

Robert Blehm

*Defendant - Appellant*

Ed Begley; Vernon Huth

*Defendant*s

Avery Williamson

*Defendant - Appellant*

Steve Morgan; Doug Niemier; Amy McGowan; Kansas City Missouri Board of
Police Commissioners; Mark Tolbert; Cathy Dean; Dawn Cramer; Quinton Lucas;
Unknown Kansas City Police Department Officers

*Defendant*s

Laura E. Elsbury

*Objector*

_____

No. 25-1515
_____

Keith L. Carnes

*Plaintiff - Appellee*

v.

Robert Blehm; Ed Begley; Vernon Huth; Avery Williamson; Steve Morgan; Doug Niemier

*Defendant*s

Amy McGowan

*Defendant - Appellant*

Kansas City Missouri Board of Police Commissioners; Mark Tolbert; Cathy Dean; Dawn Cramer; Quinton Lucas; Unknown Kansas City Police Department Officers

*Defendant*s

Laura E. Elsbury, Chief Disciplinary Counsel

*Objector*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: April 14, 2026
Filed: July 7, 2026
_____

Before GRUENDER, BENTON, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

On November 22, 2005, following a bench trial, Keith Carnes was convicted of murder in the first degree and armed criminal action for the October 2003 murder of Larry White in Kansas City, Missouri. The case against Carnes was based primarily on testimony from Lorianne Morrow and Wendy Lockett that contradicted the physical evidence. Carnes was sentenced to life in prison without probation or parole and served eighteen years in prison. In 2022, the Supreme Court of Missouri granted habeas relief because the state failed to disclose material evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). State ex rel. Carnes v. Buckner, No. SC 98736, 2022 WL 1040070, at *1 (Mo. Apr. 5, 2022) (en banc). Carnes was released from prison, and the state dismissed the charges.

Carnes filed an action under 42 U.S.C. § 1983 against: (1) four commissioners on the Kansas City, Missouri, Board of Police Commissioners; (2) various police officers and detectives involved in the investigation of White's murder; and (3) Amy McGowan, one of the prosecutors. Carnes alleged that the defendants violated his due process rights under the Fourteenth Amendment by fabricating evidence, suppressing evidence, and conducting a reckless investigation. Carnes also brought claims for malicious prosecution and unlawful pretrial detention in violation of his rights under the Fourth and Fourteenth Amendments.

The defendants filed motions for summary judgment asserting qualified immunity. Prosecutor McGowan also asserted Missouri official immunity and prosecutorial immunity. The district court[1] granted summary judgment for the commissioners and most of the law enforcement officers. The district court denied summary judgment for Detectives Robert Blehm and Avery Williamson in their individual capacities on the reckless investigation claim. The suppression of evidence claim against Detective Blehm in his individual capacity also survived

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

summary judgment. The district court denied Prosecutor McGowan's motion. Detective Williamson and Prosecutor McGowan appeal. Detective Blehm appeals only from the denial of qualified immunity on the reckless investigation claim. We affirm.

## I.    BACKGROUND[2]

At approximately 8:45 pm on October 6, 2003, White was shot and killed in the vicinity of 29th Street and Wabash Avenue in Kansas City. He died in the Fish Town restaurant parking lot. Detectives found thirteen shell casings with the closest shell casing located at least forty yards away from White's body. No bullets, bullet fragments, or shell casings were found in the parking lot. There was no physical evidence indicating that White had been shot at close range.

Detective Blehm led the murder investigation. Detective Williamson was in training under Detective Blehm at the time he assisted with the investigation. The day after the murder, Detective Blehm allegedly talked to Ronald White ("Ronald"), White's uncle. Detective Blehm stated that Ronald told him about overhearing a man known as "O.G." bragging about killing White. Detective Blehm claimed he showed Ronald photos and that Ronald identified a photo of Arnold Carr as being the man known as "O.G." In a 2024 deposition, Ronald denied ever speaking to any detectives or police officers about White's shooting.

On October 7, Detective Blehm obtained and executed a search warrant for Carr's apartment, which was located at 2404 East 29th Street Unit 1W. While executing the warrant, Detective Blehm observed that the adjoining apartment, Unit 1E, appeared to be vacant. The apartment building's owner consented to a search of apartment 1E. A detective found the murder weapon, an assault rifle, in apartment 1E. The assault rifle belonged to Gary Kitchen.

---

[2]We recite the facts in the light most favorable to Carnes. Schmit v. Trimac Transp., Inc., 172 F.4th 612, 615 (8th Cir. 2026).

On the same day the search warrant was executed, Officers Huth and Begley interviewed Lockett. According to Officer Huth's report, Lockett told them that she:

> observed a black male running from 29th and Olive (apartment buildings), being pursued by two other black males who were firing guns at him. She stated that the black male ran north in the alley, just east of the above-mentioned apartments, jumped a fence and ran eastbound beside 2846 Wabash. The two black males continued pursing him while firing rounds from an unknown weapon.

Lockett provided no additional physical description of the shooters or the guns and did not identify either shooter by name. Officer Huth referred Lockett to Detective Blehm and sent a copy of his report of the Lockett interview, in which he identified Lockett only as "confidential informant," to Detective Blehm.

Between October 9 and 12, Morrow alleges she met with Prosecutor McGowan two or three times. Morrow told Prosecutor McGowan that she saw Kitchen, the owner of the murder weapon, and Reginald Thomas shooting at White. Morrow alleges Prosecutor McGowan then told her that if Morrow did not identify Carnes as the shooter, Prosecutor McGowan would "plant drugs" on her and charge her with drug possession, which would cause Morrow to lose custody of her children.

Following these meetings with Prosecutor McGowan, on October 12, Detectives Blehm and Williamson interviewed Morrow. Morrow alleges she initially told the detectives that Thomas and Kitchen were the shooters before she changed her identification to Carnes and Kitchen. According to the detectives' report of the interview, Morrow told them that she saw Carnes chase White and shoot at him three times and saw Kitchen carrying a firearm while chasing White but that Kitchen did not shoot at White. After White collapsed in the Fish Town restaurant parking lot, Morrow stated that Carnes rolled him over and then shot him some more, "probably five more times."

On October 14, Detective Williamson interviewed Lockett, who was under the influence of controlled substances, while Detective Blehm observed via a live video feed. According to the detectives' report of the interview, Lockett saw Carnes shooting at White, then chase White, and eventually shoot White in the head after he collapsed in the parking lot. Lockett described Carnes wearing an eye patch and carrying a gun that "was one of them long things with a banana clip like." Lockett stated that Damon Rhodes and Mitchell Powell had guns and were with Carnes during the shooting. Four weeks later, Detective Blehm discovered that Rhodes had an indisputable alibi placing him somewhere else at the time of the shooting.

Despite the testimony of Morrow and Lockett contradicting the physical evidence, officers arrested Carnes on October 14. The detectives continued their investigation following his arrest.

During this subsequent investigation, two more witnesses placed Thomas at the apartment at 2404 East 29th Street on the night of the shooting. On December 4, Detective Williamson and another detective interviewed Thomas. Thomas stated that on October 6 he went to 2700 Park Avenue at around 3:05 pm to watch his girlfriend's kids, and he was there all night. Thomas claimed he was never at the apartment at 2404 East 29th Street on October 6. Thomas also told the detectives that Kitchen was with him at 2700 Park Avenue during that same time period.

Detectives Blehm and Williamson had already interviewed Kitchen on October 14, and his statements did not support Thomas' alibi. Kitchen admitted to being at 2404 East 29th Street on the evening of October 6. He never told the detectives that he was with Thomas at 2700 Park Avenue. The detectives never followed up on the discrepancies between the statements from Kitchen and Thomas or the discrepancies between Thomas' statement and the statements from other witnesses.

The case against Carnes proceeded to trial in April 2005, and the jury returned a guilty verdict. The state court vacated the verdict and granted the motion for a new

trial based on the failure to grant Carnes' motion to exclude Lockett's testimony. In November 2005, Carnes agreed to a bench trial and was found guilty again. Lockett and Morrow testified that Carnes was the shooter and provided a description of the event that contradicted the physical evidence. In both trials, Detective Blehm failed to disclose to the prosecution or the defense Officer Huth's report of his interview of Lockett.

Following trial, Morrow and Lockett recanted their testimony. Morrow revealed that Prosecutor McGowan had threatened her to implicate Carnes. Lockett claimed that Williamson took advantage of her intoxicated state to coach her to make a statement consistent with Morrow's account, which Williamson had heard two days earlier.

After the Missouri Supreme Court granted habeas relief for the Brady violation, Carnes filed the present § 1983 action. Detectives Blehm and Williamson appeal from the denial of summary judgment on qualified immunity for the reckless investigation claim. Prosecutor McGowan appeals from the denial of summary judgment on qualified immunity, prosecutorial immunity, and official immunity grounds.

## II. DISCUSSION

We review *de novo* a district court order denying summary judgment based on qualified immunity while viewing the evidence in the light most favorable to Carnes. White v. Smith, 696 F.3d 740, 753 (8th Cir. 2012) (citations omitted). The appealable issue from a denial of qualified immunity is "purely [a] legal one" regarding whether the alleged facts "support a claim of violation of clearly established law." Johnson v. Jones, 515 U.S. 304, 313 (1995) (quoting Mitchell v. Forsyth, 472 U.S. 511, 528 n.9 (1985)). We generally lack jurisdiction to review the district court's determination that the summary judgment record raised genuine issues of material fact. Id.

A.    Reckless Investigation by Detectives Blehm and Williamson

Qualified immunity shields government officials from suit unless the plaintiff shows (1) "a violation of a constitutional right" and (2) the officials' conduct violated a clearly established right.  Estate of Nash v. Folsom, 92 F.4th 746, 753-54 (8th Cir. 2024) (quoting Pearson v. Callahan, 555 U.S. 223, 231-32 (2009)).  A criminal suspect has a constitutional right to "fair criminal proceedings before being denied one's liberty" that includes the right to an adequate investigation by the police.  Walz v. Randall, 2 F.4th 1091, 1104 (8th Cir. 2021) (quoting Wilson v. Lawrence Cnty., 260 F.3d 946, 956 n.8 (8th Cir. 2001)).

To rise to the level of a constitutionally inadequate investigation, the plaintiff must establish that the law enforcement officer's "failure to investigate was intentional or reckless, thereby shocking the conscience."  Id. (quoting Brockinton v. City of Sherwood, 503 F.3d 667, 672 (8th Cir. 2007)).  "[T]his reckless standard normally contains a subjective component similar to criminal recklessness."  Wilson, 260 F.3d at 956 n.9.  While the inquiry is context specific, an investigation shocks the conscience when it includes any of the following criteria: "(1) evidence that the state actor attempted to coerce or threaten the defendant, (2) evidence that investigators purposefully ignored evidence suggesting the defendant's innocence, (3) evidence of systematic pressure to implicate the defendant in the face of contrary evidence."  Walz, 2 F.4th at 1104 (quoting Akins v. Epperly, 588 F.3d 1178, 1184 (8th Cir. 2009)).

Morrow was the first eyewitness Detectives Blehm and Williamson interviewed.  She recounted seeing Carnes roll White over in the parking lot and shoot him five times while standing directly above him.  From the physical evidence, the detectives knew there were no bullets, bullet fragments, or shell casings in the parking lot despite finding multiple shell casings along 29th Street.  Other physical evidence confirmed Carnes was not shot at close range.

The failure to follow up on minor inconsistencies in a witness' statements does not rise to reckless conduct. Id. (claiming inconsistencies in a sexual assault investigation because the victim did not immediately tell her mother or school employees that the encounter was nonconsensual). To completely fabricate an event—rolling the body over and shooting the victim five times—is not a minor inconsistency.

In addition, Morrow alleges she initially told the detectives that she saw Thomas, not Carnes, with Kitchen chasing and shooting at White. Viewing the evidence in the light most favorable to Carnes, the district court adopted this fact. Changing the identity of Kitchen's accomplice is also not a minor inconsistency.

Lockett was the second eyewitness Detectives Blehm and Williamson interviewed. Viewing the evidence most favorably to Carnes, the detectives knew Lockett was under the influence of controlled substances during the interview. Detective Williamson, a trainee at the time, led the interview. Lockett alleges that Detective Williamson, armed with the testimony Morrow provided two days earlier, coerced or coached her to implicate Carnes. Mirroring Morrow's statement, Lockett claimed Carnes rolled White's body over in the parking lot and then shot him—a major inconsistency.

Lockett's allegation of coercion or coaching is a factor we have found rises to the level of an investigation that shocks the conscience. Id. (quoting Akins, 588 F.3d at 1184). That portion of her testimony describing rolling the body over and then shooting White at close range contradicted the physical evidence. Lockett identified two other men with Carnes, neither of whom was Kitchen, the owner of the murder weapon and identified by Morrow as chasing White while holding a gun. The detectives soon learned that one of the individuals identified by Lockett as being with Carnes at the time of the shooting had an indisputable alibi. Even setting aside the alleged coercion, Lockett's account contained significant discrepancies including the conflict with the physical evidence and the identification of a person who was not present. See Engesser v. Fox, 993 F.3d 626, 630 (8th Cir. 2021)

("[F]aced with conflicting information, investigators sometimes have no choice but to discount witness statements that do not fit with the evidence found at the scene of the crime." (cleaned up and citation omitted)).

In addition to Lockett's allegation that Detective Williamson coerced or coached her while she was under the influence, there are significant discrepancies between the account she gave the detectives and the account she provided to Officers Huth and Begley. As Detective Blehm knew from Officer Huth's report, Lockett originally did not identify either black man by name, she did not describe one of the men as wearing an eye patch, she stated that there was more than one man chasing White, she did not describe either gun as having a banana clip, and she did not recount White being shot at close range in the parking lot. One would reasonably expect that Lockett's account of crucial details, such as the identity of the shooters, should have been consistent between the two statements. The failure to question the veracity of Lockett's account given the lack of consistency on critical details and verified false details demonstrates purposeful disregard of evidence suggesting Carnes' innocence. Walz, 2 F.4th at 1104 (quoting Akins, 588 F.3d at 1184).

Finally, there is the lack of follow through with the suspects Thomas and Kitchen. Kitchen, as the owner of the murder weapon, could reasonably be characterized as the prime suspect. When interviewed by Detectives Blehm and Williamson, Kitchen admitted to being at the scene of the shooting shortly before it occurred. Morrow told the detectives she saw Kitchen wielding a firearm and chasing White. Kitchen provided no alibi witness for his whereabouts at the time of the murder. When Detective Williamson later interviewed Thomas, Thomas claimed he was at another location with Kitchen from 3:05 pm through the time of the shooting. This statement conflicted with Kitchen's statement to the detectives. Thomas' statement also conflicted with the accounts of two other witnesses. Despite all these inconsistencies, the detectives failed to further investigate the involvement of Thomas and Kitchen in the shooting.

A reasonable factfinder could determine that the detectives acted recklessly in uncritically accepting witness testimony that contradicted the physical evidence, contained verified falsehoods, and contradicted the testimony of multiple other witnesses. See Wilson, 260 F.3d at 957 (stating the failure to investigate other leads when the evidence against the plaintiff is unreliable "could easily be described as reckless or intentional"); see also Winslow v. Smith, 696 F.3d 716, 735 (8th Cir. 2012) (finding sufficient evidence for a reckless investigation when the defendants "had multiple opportunities to see that the evidence they were assembling did not support their theory of the case," "recognize[d] that certain testimony and details . . . caused serious problems for their case," and decided to "press[] ahead and continue[] to exert pressure on vulnerable witnesses to provide testimony that was not within those witnesses' personal memory."). The investigation would also shock the conscience if the factfinder determines that Detective Williamson coerced Lockett to implicate Carnes. The district court properly denied qualified immunity to Detectives Blehm and Williamson on the reckless investigation claim.

### B.    Prosecutor McGowan

The claims against Prosecutor McGowan rest solely on the allegation that, prior to Morrow's first interview with police, she coerced Morrow to identify Carnes as the shooter. Prosecutor McGowan asserts that we may question the facts adopted by the district court under the "blatantly contradicted by the record" exception. See Garang v. City of Ames, 2 F.4th 1115, 1121 (8th Cir. 2021) (quoting Sok Kong v. City of Burnsville, 960 F.3d 985, 991 (8th Cir. 2020)) (stating the appellate court has jurisdiction to review a fact the district court determined was in dispute when the determination is blatantly contradicted by the record).

While there are inconsistencies in Morrow's post-trial statements about when and how many times she met with Prosecutor McGowan, the central allegation of her testimony has remained the same. Morrow has consistently claimed that Prosecutor McGowan threatened her to identify Carnes as one of the shooters. The differences in precise dates, how many times this occurred, and Morrow's past

-11-

admissions about memory problems relate to credibility, but they do not blatantly contradict the disputed fact. We therefore lack jurisdiction to review the district court's determination that this is a genuine dispute of fact.

### 1. *Prosecutorial Immunity*

A state prosecutor is entitled to "absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). A prosecutor is not entitled to absolute immunity when she performs "investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution . . . ." Id. at 273. A prosecutor performing investigative functions before there is probable cause is not acting as an advocate. Id. at 274. In this case, there is a genuine dispute of material fact as to whether Prosecutor McGowan suppressed and fabricated evidence before there was probable cause to arrest or initiate judicial proceedings against Carnes. The district court did not err in denying the motion for summary judgment on prosecutorial immunity.

### 2. *Qualified Immunity*

Prosecutor McGowan also asserts she is entitled to qualified immunity, adding that the district court treated her differently than the police officers by not addressing her claim of qualified immunity as thoroughly as with the police officers. Regardless, as with the officers, a prosecutor is not entitled to qualified immunity when she suppresses or fabricates evidence while performing investigative functions. McGhee v. Pottawattamie Cnty., 547 F.3d 922, 933 (8th Cir. 2008). Because there is a genuine issue of material fact on whether Prosecutor McGowan suppressed and fabricated evidence while performing an investigative function, the district court properly denied the motion for summary judgment on qualified immunity.

### 3. Official Immunity

With respect to the two state law claims, malicious prosecution and intentional infliction of emotional distress, Prosecutor McGowan seeks protection under official immunity. Official immunity is a "judicially-created doctrine" that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008) (en banc). A public employee loses official immunity if she acts in bad faith or with malice. Boude v. City of Raymore, 855 F.3d 930, 935 (8th Cir. 2017) (quoting Austell v. Sprenger, 690 F.3d 929, 938 (8th Cir. 2012)) (applying Missouri law). "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Id. (quoting State ex. rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986) (en banc)).

"[A] defendant asserting the affirmative defense of official immunity bears the burden of proving it applies." Kemp v. McReynolds, 621 S.W.3d 644, 652 (Mo. Ct. App. 2021). But a plaintiff's conclusory allegation of bad faith is insufficient to defeat summary judgment on official immunity. Boude, 855 F.3d at 935.

In this case, the district court determined there was a genuine dispute of fact regarding whether Prosecutor McGowan suppressed the evidence that Thomas was the other shooter and coerced Morrow to implicate Carnes in the homicide. A person of reasonable intelligence would know it is contrary to the duty of a prosecutor to suppress the identity of the killer and frame someone else for the crime. These actions were intended to be injurious to Carnes by subjecting him to prosecution and incarceration. The district court properly denied Prosecutor McGowan's motion for summary judgment based on official immunity because there was an issue of fact on whether she acted with malice.

## III. CONCLUSION

The district court's order on the motions for summary judgment is affirmed.

_____